**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Rebecca Suarez, individually and on behalf of all others similarly situated, | 1:22-cv-04743 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Conagra Brands, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.    Conagra Brands, Inc. ("Defendant") manufactures, packages, labels, markets, and sells sunflower seeds having a "Chile Limón Flavor" under the Bigs brand ("Product").



2.      The representation of "Chile Limón Flavor" is false and misleading because this fails to adequately disclose the source of the Product's chili pepper and lime taste.

## I.      CONSUMER AVOIDANCE OF ARTIFICAL FLAVORS

3.      According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

4.      Natural flavor refers to the "essential oil, oleoresin, essence or extractive" from fruits or vegetables, "whose significant function [] is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

5.      Artificial flavor is "any substance, the function of which is to impart flavor" from sources other than fruits or vegetables. 21 C.F.R § 101.22(a)(1).

6.      According to Paul Manning, chief executive officer and president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[2]

7.      Recent surveys report that over eighty percent of Americans believe that foods with artificial flavor are less healthy than those with only natural flavors.

8.      According to Nielsen, the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

9.      The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[3]

10.     Mintel announced that consumer avoidance of artificial flavors is just as strong as

---

[1] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.
[2] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.
[3] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

their desire for natural flavors, in its Report, "Artificial: Public Enemy No. 1."[4]

11.     Surveys by Nielsen, New Hope Network, and Label Insight concluded that between sixty and eighty percent of the public seeks to avoid artificial flavors.

## II.     MALIC ACID

12.     A flavor is a substance with a function to impart taste. See 21 C.F.R. § 101.22(a)(1) and (3).

13.     Taste is a combination of sensations arising from specialized receptor cells in the mouth.[5]

14.     Taste can be defined as sensations of sweet, sour, salty, bitter, and umami.

15.     However, limiting taste to five categories suggests taste is simple, which is not true.

16.     For example, the taste of sour includes the sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples (malic acid), and wines (tartaric acid).

17.     Each of those acids is responsible for unique sensory characteristics of sourness.

18.     Fruit flavors are the sum of the interaction between sugars, acids, and volatile compounds.[6]

19.     Consumer acceptability of the flavor of chili peppers and limes are based on their perceived sweetness, sourness and tartness, determined by its sugar to acid ratio.[7]

20.     The sugars in fruits are mainly glucose and fructose, while the acids are mainly malic

---

[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.
[5] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).
[6] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).
[7] While capsaicin is the compound in chili peppers that makes them spicy, this is only one aspect of these fruits and is not flavor per se but a source of irritation that feels like heat.

acid and citric acid.

21.   The table below shows the acid composition of numerous fruits, and reveals the second predominant acid in chili peppers and lime is malic acid.

| Fruit | First Predominant Acids | Second Predominant Acids |
|---|---|---|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Citric Acid | Malic Acid |
| Blueberry | Citric Acid | Malic Acid, Quinic Acid |
| Cherry | Malic Acid (94%) | Tartaric Acid |
| Cherry (Tropical) | Malic Acid (32%) | Citric Acid |
| Chili Peppers | Citric Acid | Malic Acid, Succinic Acid |
| Dragon fruit | Malic Acid | Citric Acid |
| Grape | Malic Acid (60%) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lemon | Citric Acid | Malic Acid |
| Lime | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

22.   Malic acid is an integral part of the taste of chili peppers and limes.

23.   Malic acid's tartness distinguishes limes from lemons, by providing the characteristic bitter and more acidic taste limes are known for.

4

24.     Malic acid in limes is the reason the taste of these fruits lasts longer than lemons.

25.     Though most people think the flavor of chili peppers is due exclusively to the capsaicinoids that are responsible for their characteristic burning (pungency) sensation, these compounds are not technically sensed by our taste buds.

26.     Instead, the heat sensation experienced from eating chili peppers is due to irritation of the sensory receptors.

27.     Like other fruits, chili peppers rely its combination of sugars and organic acids to provide their underlying spicy, peppery, and tart flavor.

## III.   CHEMICAL STRUCTURE OF MALIC ACID

28.     Malic acid is the common name for 1-hydroxy-1, 2- ethanedicarboxylic acid.

29.     Malic acid has two isomers, or arrangements of atoms, L-Malic Acid and D-Malic Acid. 21 C.F.R. § 184.1069.

30.     An isomer is a molecule sharing the same atomic make-up as another but differing in structural arrangements.[8]

31.     Stereoisomers differ by spatial arrangement, meaning different atomic particles and molecules are situated differently in any three-dimensional direction.

32.     An enantiomer is a type of stereoisomer and like right and left-hand versions of the same molecular formula.

33.     D-Malic Acid and L-Malic Acid are enantiomers with almost identical skeletal formulas.

---

[8] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).



34.     L-Malic Acid occurs naturally in chili peppers and limes, and is known for providing the sour, sweet, acidic, peppery and tart tastes these fruits are known for.

35.     D-Malic Acid does not occur naturally.

36.     D-Malic Acid is most commonly found as a racemic mixture of the D and L isomers, or DL-Malic Acid, commercially made from petroleum.

37.     DL-Malic Acid is synthetically produced from petroleum in a high-pressure, high-temperature, catalytic process.

## IV.   LABEL OMITS ADDED ARTIFICIAL FLAVORING

38.     The Product's primary or "characterizing" flavor is "Chile Limón," from chili pepper and lime, because the label makes "direct [] representations" about these fruits through the words, "Chile Limón," picture of a sliced lime, and the red background matching the color of chili peppers. 21 C.F.R. § 101.22(i).

39.     Federal and identical state regulations require the Product to disclose the source of its chili pepper and lime flavor on the front label, i.e., from chili peppers and lime, natural sources other than chili peppers and lime, natural chili pepper and lime flavors, and/or artificial, synthetic sources. 21 C.F.R. § 101.22(i).

40.     By representing the Product as having a "Chile Limón Flavor" with "Flavor"

6

significantly smaller than "Chile" and "Limón," and in a different font, consumers will expect all of the taste will come from the characterizing ingredients of chili peppers and lime.

41. Though the ingredients include "Aged Red Peppers" and "Lime Juice Solids," they also include "Malic Acid" and "Natural Flavors."

INGREDIENTS: SUNFLOWER SEEDS, SALT, MALTODEXTRIN, LESS THAN 2% OF: SUGAR, DISTILLED VINEGAR, SPICES, CITRIC ACID, CAYENNE PEPPER SAUCE POWDER (AGED RED PEPPER, DISTILLED VINEGAR, SALT, GARLIC), GARLIC POWDER, LIME JUICE SOLIDS, NATURAL FLAVORS, ASCORBIC ACID, EXTRACTIVE OF ANNATTO (COLOR), MALIC ACID, ONION POWDER, TARTARIC ACID, XANTHAN GUM, SODIUM DIACETATE.

**INGREDIENTS:** SUNFLOWER SEEDS, SALT, MALTODEXTRIN, LESS THAN 2% OF: SUGAR, DISTILLED VINEGAR, SPICES, CITRIC ACID, CAYENNE PEPPER SAUCE POWDER (AGED RED PEPPERS, DISTILLED VINEGAR, SALT, GARLIC), GARLIC POWDER, LIME JUICE SOLIDS, NATURAL FLAVORS, ASCORBIC ACID, EXTRACTIVE OF ANNATTO (COLOR), MALIC ACID, ONION POWDER, TARTARIC ACID, XANTHAN GUM, SODIUM DIACETATE.

42. Based on laboratory analysis, this is artificial DL-Malic Acid and not natural L-Malic Acid.

43. Federal and state regulations require that because the Product contains DL-Malic Acid that imparts the flavors of chili pepper and lime, "Chile Limón" is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Chile Limón Flavored" or "Artificially Flavored Chile Limón." 21 C.F.R. § 101.22(i)(2).

44. Even if DL-Malic Acid did not impart flavor, the front label would be required to state, "Natural Chile Limón Flavored" or "Chile Limón Flavored." 21 C.F.R. § 101.22(i)(1)(i).

45. In this instance, the addition of "ed" after "Flavor" tells consumers the Product does

7

not just taste like chili peppers and lime, but that it does not contain an amount of its characterizing ingredients sufficient to independently characterize it. 21 C.F.R. § 101.22(i)(1)(i).

46.     The combination of DL-Malic Acid with sugars is not equivalent to the natural flavors of chili peppers and lime.

47.     The addition of DL-Malic Acid imparts, creates, simulates, resembles and/or reinforces the sour, tart, and spicy taste that chili peppers and lime are known for.

48.     Defendant could have added L-Malic Acid from more red peppers and limes or other fruits, or a natural version of citric or malic acid, but used artificial DL-Malic Acid because it cost less and/or more accurately simulated, resembled, and/or reinforced the taste of chili peppers and lime.

49.     DL-Malic Acid is not a "natural flavor" as defined by federal and state regulations, because it is not from a fruit, vegetable or other natural source.

50.     The addition of "Natural Flavors" imparts, creates, simulates, resembles and/or reinforces the sour, tart, and spicy taste that chili peppers and lime are known for.

## V.     DL-MALIC ACID IS USED TO IMPART FLAVOR

51.     In certain uses, DL-Malic Acid could be a flavor enhancer or PH balancer.

52.     A flavor enhancer is "added to supplement, enhance, or modify the original taste and or aroma of a food without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11).

53.     The addition of malic acid to vinegar (ascetic acid) dishes like barbecue pork, coleslaw, or pickled eggs would not fundamentally alter those underlying vinegar flavors.

54.     However, because the flavor imparted by malic acid is a core component of chili pepper and lime, DL-Malic Acid imparts a flavor of its own and is not a flavor enhancer.

8

55. PH balancers are "substances added to change or maintain active acidity or basicity, including buffers, acids, alkalis, and neutralizing agents." 21 C.F.R. § 170.3(o)(23).

56. The added DL-Malic Acid is not a PH balancer because it is not necessary to change or maintain the Product's acidity or basicity, because sunflower seeds are shelf-stable.

57. Irrespective of the purpose DL-Malic Acid was added, its effect is to provide the flavors of chili pepper and lime.

## VI. CONCLUSION

58. The Product contains other representations and omissions which are false and misleading.

59. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

60. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

61. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $5.99 for 5.35 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

62. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

63. The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

64. Plaintiff Rebecca Suarez is a citizen of Wisconsin.

65.     Defendant Conagra Brands, Inc., is a Delaware corporation with a principal place of business in Chicago, Cook County, Illinois.

66.     The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

67.     The members of the proposed classes Plaintiff seeks to represent are more than 100, because the Product is sold at thousands of grocery stores, dollar stores, drug stores, convenience stores, big box stores, and/or online, in the identified States.

68.     Venue is in this District and the Eastern Division because Defendant resides here, with its principal place of business in Cook County.

Parties

69.     Plaintiff Rebecca Suarez is a citizen of Madison, Wisconsin, Dane County.

70.     Until several months ago, Plaintiff resided in Morrison, Illinois, Whiteside County.

71.     Defendant Conagra Brands, Inc., is a Delaware corporation with a principal place of business in Chicago, Cook County, Illinois.

72.     Defendant owns and controls the Bigs brand of sunflower seeds.

73.     Consumers trust the Bigs brand of sunflower seeds to be honest with them because it has built up a positive reputation in this area.

74.     Plaintiff read "Chile Limón Flavor" and saw the picture of half a fresh lime and expected the Product did not contain artificial flavors and got its chili pepper and lime taste only from these ingredients.

75.     Plaintiff is part of the majority of consumers who avoid artificial flavors, based on their beliefs that foods with artificial flavor are less healthy than those without them.

76.     Plaintiff was unable to learn the malic acid listed in the ingredients was the artificial

version and that it was used to simulate, resemble, and create the Product's chili pepper and lime taste, and that the "Natural Flavors" contributed to and reinforced its taste.

77.     Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

78.     Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Casey's, 602 E Lincolnway, Morrison, IL 61270, between March 2022, and May, 2022, and/or among other times.

79.     Plaintiff bought the Product at or exceeding the above-referenced price.

80.     Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

81.     Plaintiff paid more for the Product than she would have paid had she known the representations were false and misleading, as she would not have bought it or paid less.

82.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its composition.

83.     Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar sunflower seeds which fail to disclose artificial flavoring on the front label, because she is unsure whether those representations are truthful.

<u>Class Allegations</u>

84.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Wisconsin and Illinois Class:** All persons in the States of Wisconsin and Illinois who purchased the

11

Product during the statutes of limitations for each cause of action alleged; and

**Consumer Fraud Multi-State Class**: All persons in the States of Alabama, New Mexico, Mississippi, Utah, Nebraska, South Carolina, Tennessee, and Virginia who purchased the Product during the statutes of limitations for each cause of action alleged.

85.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

86.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

87.   Plaintiff is an adequate representative because her interests do not conflict with other members.

88.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

89.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

90.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

91.   Plaintiff seeks class-wide injunctive relief because the practices continue.

Wisconsin Deceptive Trade Practices Act ("DTPA"), Wis. Stat. § 100.18 and/or Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq.

92.   Plaintiff incorporates by reference all preceding paragraphs.

93.   Plaintiff relied on the representations and omissions to believe the Product did not

contain artificial flavor, and got its chili pepper and lime taste only from these ingredients.

94.    Wis. Stat. § 100.18 provides a private cause of action for pecuniary loss resulting from an advertisement to the public that contains an "assertion, representation or statement of fact which is untrue, deceptive or misleading."

95.    Wis. Stat. § 100.20 prohibits "unfair trade practices" that violate orders from the Wisconsin Department of Agriculture, Trade, and Consumer Protection ("DATCP"). Wis. Stat. § 100.20(5).

96.    Plaintiff suffered a pecuniary loss due to defendant's violation of Wis. Admin. Code §§ ATCP 90.02 and 90.10.

97.    Defendant violates § ATCP 90.02(1) because "Chile Limón Flavor Sunflower Seeds" is not the Product's common or usual name because it does not adequately disclose the source of its flavoring.

98.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

99.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

100.    The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statutes invoked by Plaintiff.

101.    Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

13

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

102.   The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it did not contain artificial flavor, and got its chili pepper and lime taste only from these ingredients.

103.   Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

104.   Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as the absence of artificial flavorings and only natural flavorings, and developed its marketing and labeling to directly meet those needs and desires.

105.   The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that it did not contain artificial flavor, and got its chili pepper and lime taste only from these ingredients.

106.   Defendant affirmed and promised that the Product contained flavoring from its characterizing ingredients of chili peppers and lime.

107.   Defendant described the Product so Plaintiff and consumers believed it did not contain artificial flavor, and got its chili pepper and lime taste only from these ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

108.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

109.   This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Bigs brand, a leading seller of sunflower seeds.

14

110. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

111. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties associated with the Product.

112. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

113. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

114. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it did not contain artificial flavor, and got its chili pepper and lime taste only from these ingredients.

115. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it did not contain artificial flavor, and got its chili pepper and lime taste only from these ingredients, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

<u>Negligent Misrepresentation</u>

116. Defendant had a duty to truthfully represent the Product, which it breached.

117. This duty is based on its position, holding itself out as having special knowledge and experience this area, custodian of the Bigs brand, a leading seller of sunflower seeds.

118. The representations took advantage of consumers' cognitive shortcuts made at the

point-of-sale and their trust in Defendant, a globally recognized and iconic brand.

119.  Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

<u>Fraud</u>

120.  Defendant misrepresented that the Product did not contain artificial flavor, and got its chili pepper and lime taste only from these ingredients, by omitting the above-referenced disclosures from the front label.

121.  The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

<u>Unjust Enrichment</u>

122.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3.  Awarding monetary, statutory, and/or punitive damages pursuant to applicable laws;

4.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and

experts; and

5.  Other and further relief as the Court deems just and proper.

Dated:    September 4, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

17